LEMMON, Judge.
The issue in plaintiff’s appeal in this workmen’s compensation action is whether he proved total and permanent disability.
Plaintiff was employed as a brick mason and foreman. On July 3, 1970 he fell 35 feet and sustained a fractured pelvis and fractures of five transverse processes on the left side. He was hospitalized by Dr. Randall Williams, an orthopedic surgeon, who reported that plaintiff did well with bed rest and was discharged in good condition on July 17, to be followed through office visits.
Dr. Williams prescribed the normal conservative treatment for this type of injury, which included bed rest, refraining from weight bearing for a period of time, and gradual ambulation. On October 30, 1970 Dr. Williams found a good range of motion and discharged plaintiff as able to return to his normal duties, assigning a 10% permanent physical disability of the back with an excellent overall prognosis. He had no record of prescribing medication after the hospital discharge, but stated he probably recommended medication for the soreness and stiffness associated with ambulation. Neither did he record any complaints of pain at the time of discharge.[1]
Dr. Williams explained that plaintiff’s was not a serious type of injury such as was likely to produce disability, but was the type of injury which involved considerable pain in the early stages because of inflammation of the muscle tissue attached to the transverse processes and resulting spasm. He further commented that scarring, produced as the muscle heals back to the bony attachment, also produces stiffness and pain, but not of extensive duration.
On the other hand, plaintiff testified that he spent two to three months in the *273 hospital and was sent home, “still paralyzed”, for another month and a half of bed rest in a completely helpless condition. He claimed Dr. Williams had discharged him while he was still on crutches, and he therefore on October 28 consulted Dr. J. R. Diamond, a family practitioner, who specializes in treating trauma cases.
Dr. Diamond found impaired flexion of the hip, limitation of motion and tenderness in the lower lumbar spinous processes and sacroiliac joint, and he diagnosed lum-bosacral and sacroiliac strain, in addition to the healing fractures.- He recommended physical therapy for palliation of pain and restoration of motion and strength.
Plaintiff was administered physical therapy once or twice a week through March 3, when Dr. Diamond reexamined him and again found motion limitation and tenderness. He did not reexamine the pelvis, since plaintiff made no complaints referra-ble to that area, but did X-ray the lumbar spine with no significant findings.
On May 22 plaintiff complained of lum-bosacral pain and of leg cramps at night, and the doctor found tenderness but normal motion.
Dr. Diamond again examined plaintiff in November for neck problems, apparently unrelated to the accident. He reported that plaintiff stopped treatment around that time and didn’s return until March, 1972, when he complained of unabated pain. The doctor referred plaintiff to a neurosurgeon, who examined him but declined to recommend procedures to investigate the disc or nerve root involvement.
Plaintiff returned in March, 1973, but Dr. Diamond’s examination revealed no objective findings. Plaintiff next returned in November, 1973, complaining of pain and stiffness, particularly in the morning. Dr. Diamond prescribed a one-week dosage of anti-inflammatory medication, after which plaintiff was found to be improving. Dr. Diamond then prescribed a two-week dosage, but plaintiff didn’t return for five months, at which time Dr. Diamond prescribed a stronger medicine. Plaintiff never returned thereafter.
Dr. Diamond found no indication of disc problems, but opined plaintiff had “a mechanical low back problem . . . probably a ligamentous injury” and estimated plaintiff to be 35% permanently disabled, “predicated on his pain and suffering.” He also stated plaintiff was unable to climb, lift, stoop or strain.
Plaintiff at time of trial claimed to be in constant pain and testified that his left leg is two inches shorter and two inches larger in circumference than his right (a fact not reported by any doctor). He admitted working regularly since December, 1970, but explained he could not keep up the pace of regular brickwork and had to confine himself to refractory work (industrial work in heaters and such structures of mills and refineries), which involves laying considerably less bricks per day and is regarded to be lighter work. Plaintiff presented two co-workers and his union president to corroborate his position.
Plaintiff’s work record, however, belies his claim as to impaired earning capacity. In 1969 (the year before the accident) he earned appoximately $12,000.00, mostly for work with defendant.[2] His 1971 earnings were approximately the same, his 1972 earnings increased, and his 1973 earnings exceeded $19,000.00, mostly with the company for which he worked regularly at time of trial, but also including about $1,500.00 paid by defendant. (During the same period the hourly wage rate increased about 33%). Additionally, the union president testified that a bricklayer normally worked 1,800 to 2,000 hours per year, which would produce annual earnings of about $16,000.00 at the wage rate in effect at time of trial.
*274 The trial court found that after the accident plaintiff had in fact engaged regularly in work of a similar character to that which he was accustomed to performing and that plaintiff had performed this work in moderate pain, not substantial enough to classify him as totally and permanently disabled. Based on a finding that the usefulness of a physical function has been seriously and permanently impaired, the court awarded 100 weeks of benefits under R.S. 23:1221(4) (p).
The evidence, outlined above in considerable detail, supports the trial judge’s finding that plaintiff could and did perform work of a reasonable character similar to that performed before the injury. The resolution of plaintiff’s claim as to continual and substantial pain is somewhat of a credibility determination, to which a reviewing court should accord considerable weight. Furthermore, plaintiff’s claim in this regard was not substantially supported (and to some extent was contradicted) by the medical evidence.
The judgment is affirmed.

. Defendant paid compensation benefits through the date of discharge by Dr. Williams.

. His 1970 earnings before the accident were at about the same monthly rate.